IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| ANTONIA JUANITA BENAVIDEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:22-cv-058-BP |
| § | |
| COMMISSIONER OF § | |
| SOCIAL SECURITY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Antonia Juanita Benavidez ("Benavidez") applied for Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding she was not disabled. Benavidez appealed. Finding no reversible error, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** the case **with prejudice.**

**I.     BACKGROUND**

Benavidez seeks disability benefits under Title XVI of the SSA, claiming disability since October 10, 2009. Soc. Sec. Admin. R. (hereinafter "Tr."). ECF No. 14-1 at 80. Benavidez's SSI application specified several medical conditions that limit her ability to work, including back problems, bipolar disorder, anxiety disorder, diabetes, and sleep apnea. Tr. 80, 87, 100, 118. The Commissioner denied her application initially and upon reconsideration. *Id.* at 168, 172, 177, 180. Benavidez challenged the Commissioner's denial before an Administrative Law Judge ("ALJ") (*id.* at 189-190), who conducted a telephonic hearing (*id.* at 54-79) and later affirmed the Commissioner's denial in an eighteen-page decision. *Id.* at 35-52.

After the Social Security Appeals Council denied Benavidez further administrative review (*id.* at 6-13), she filed this civil action seeking judicial review under 42 U.S.C. § 416(g). ECF

No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). She claims that she is disabled and thus entitled to SSI. ECF No. 1.

## II.     STANDARD OF REVIEW

Title XVI of the SSA governs the SSI program. *See* 42 U.S.C. §§ 1381-1383f. Claimants seeking benefits must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating that the "relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for [SSI]"). A person is disabled "if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* § 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 416, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.*

§ 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations." *Id.* § 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [s]he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382 ("Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion."); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully

scrutinize the record to determine if substantial evidence is present. *Harris,* 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

**III.   ANALYSIS**

The Commissioner, acting through the ALJ, completed the five-step evaluation process here, finding that Benavidez had: (1) not engaged in substantial gainful activity since April 20, 2020; (2) several severe impairments, including anxiety/depression, lumbar and cervical degenerative disc disease, and obesity; and (3) no impairment or combination of impairments that qualify under the federal regulatory list. Tr. 36-43. He then determined that

> [Benavidez] ha[d] the [RFC] to perform light work as defined in 20 CFR [§] 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. She can attend to and carry out routine, repetitive tasks. She can occasionally interact with co-workers and the public.

*Id.* at 43. Using his RFC determination, the ALJ completed steps four and five, determining that Benavidez (4) had no past relevant work, but (5) could perform jobs existing in significant numbers in the national economy, including a marker, cleaner, housekeeper, and photocopy machine operator. *Id.* at 46-47. Because of the step-five finding, the ALJ concluded that Benavidez was not disabled and thus not entitled to SSI. *Id.* at 47-48.

Benavidez does not challenge the ALJ's findings at steps one through three, but does assert that "[t]he ALJ's RFC determination is not supported by substantial evidence and is the product of legal error because he failed to properly evaluate the opinion of consultative examiner Gayle Pitcher, Ph.D." ECF No. 18 at 5. The Court overrules this issue and affirm the ALJ's decision.

### A. The ALJ properly evaluated Dr. Pitcher's medical opinion in determining Benavidez's RFC.

"The ALJ is responsible for assessing the medical evidence and determining the claimant's [RFC]." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). He bases his determination "on all of the relevant medical and other evidence." 20 C.F.R. § 416.1545(a)(3). The Court must defer to his RFC determination if substantial evidence supports it. *Perez*, 777 F.2d at 302.

#### 1. An ALJ must consider certain factors among the relevant medical records when determining a claimant's RFC.

The ALJ "may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions." *Ripley*, 67 F.3d at 557-58. For SSI applications filed after March 27, 2017 (like Benavidez's), 20 C.F.R. § 416.920c governs how the ALJ considers medical opinions. *See* Tr. 154-55. The ALJ must "articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions" in an applicant's case record. § 416.920c(b). His articulation must address several factors, of which the most important are an opinion's "supportability" and "consistency." *Id.* § 416.920c(b)(2).

Supportability depends on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." *Id.* § 416.920c(c)(1). Consistency aligns the opinion "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 416.920c(c)(2). The more supported and consistent a medical opinion is, the more persuasive it is. *Id.* § 416.920c(c)(1)-(2). Accordingly, the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 416.920c(b)(2). But he need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Id.* § 416.920c(a).

5

## 2. The ALJ found Dr. Pitcher's opinion unpersuasive.

The ALJ referenced Dr. Pitcher's findings in his decision. Tr. 40-41. He explained in detail why he found them unpersuasive:

> The opinion of the psychological consultative evaluator at Exhibit B6F is unpersuasive. The findings that [Benavidez] would be unable to sustain concentration and persist at a reasonable pace at the workplace along with the finding that she could not maintain effective social interaction is only partially supported by the findings during the examination. The claimant's memory, outside of some minor deficits in her short-term memory… was intact…. She was able to engage in reciprocal conversation… The claimant had no difficulties interacting or communicating normally during the examination, and any social limitations seem to be based solely on the claimant's subjective reports. Moreover, the conclusions are inconsistent with the progress notes of the treatment providers, which do not indicate any social difficulties and note the claimant's attention and concentration to be 'fair' throughout the record.

*Id.* at 41. Benavidez submits that the ALJ inadequately explained the supportability and consistency factors under 20 C.F.R. § 416.920c, constituting legal error. *See* ECF No. 17 at 13-22.

## 3. The ALJ applied proper legal standards in finding that Dr. Pitcher's opinion was unpersuasive, and substantial evidence supports his explanation.

The ALJ was not required to adopt Dr. Pitcher's opinion. 20 C.F.R. § 416.920c(a); *see also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) (The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion). However, he was required to explain how persuasive he found it, including addressing the consistency and supportability factors in 20 C.F.R. § 416.920c(b)(2).

Little authority discusses what an ALJ must do "to adequately 'explain' supportability and consistency or what happens when those discussions are missing." *See Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 754833, at *3 n.1 (S.D. Miss. Feb. 26, 2021). The ALJ errs if he "fail[s] to discuss, cite, or even mention" a medical opinion. *William T. v. Comm'r of Soc. Sec.*, No. 6:18-cv-0055-BU, 2020 WL 6946517, at *6 (N.D. Tex. Nov. 25, 2020) ("[T]he regulations do not

6

appear to contemplate a scenario where an ALJ fulfills his legal obligation to consider a medical opinion without also explicitly discussing how he did so").

No formalistic rules govern how an ALJ must articulate a decision. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). At a minimum, the ALJ's explanation must allow for meaningful judicial review. *Kinney v. Astrue*, No. 5:09-cv-00008-C-BG, 2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009) *rec. adopted*, 2009 WL 2981907, at *1 (N.D. Tex. Sept. 17, 2009) (citing *Audler*, 501 F.3d at 446). Here, the ALJ discussed Dr. Pitcher's findings and opinion in his decision, and he provided an explanation for their non-persuasiveness. His supportability and consistency explanations permit meaningful judicial review.

The ALJ's explanation adequately addressed consistency because Dr. Pitcher's opinion that Benavidez had difficulty maintaining effective social interaction or sustaining concentration was inconsistent with substantial evidence that the ALJ cited in finding that Benavidez could make basic decisions, concentrate, interact with others, and respond to change. Tr. 46. As the ALJ observed in his decision, the evidence showed that Benavidez had both linear and goal directed thought process, grossly intact memory, and fair attention and concentration. Tr. 45-46 (citing 687-90). It also demonstrated that she could complete household chores, prepare simple meals, and clean her living area. *Id.* (citing 687).

Although Benavidez reported to Dr. Pitcher that she had anxiety and depression, got overwhelmed when she was around a lot of people, and had trouble staying focused on what she was doing, Dr. Pitcher also noted that she could complete routine household chores, had no difficulty interacting or communicating during her examination, and had no significant deficits in expressive or receptive language abilities. *See id.* 688-690. The ALJ's explanation of why he found Dr. Pitcher's opinion not fully supported by her examination findings is sufficient.

7

The ALJ further recognized that the State Agency physicians and other treatment providers found no impairment or combination of impairments that met or equaled the criteria of an Appendix 1 listing, in contrast with Dr. Pitcher's findings. *See* Tr. 46, 100, 105-107; 20 C.F.R. § 416.920c(c)(2). The ALJ found persuasive the medical opinions of the State Agency Psychological Consultant ("SAPC") (*id.* at 46), that Benavidez was "[n]ot significantly limited" in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "understand and remember detailed instructions"; "carry out very short and simple instructions"; "perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances"; and "work in coordination with or in proximity to others without being distracted by them." *Id.* at 105-06. The SAPC also found Benavidez only "[m]oderately limited" in her "ability to carry out detailed instructions" and "maintain attention and concentration for extended periods." *Id.* The SAPC explained that Benavidez could "make basic decisions, concentrate for extended periods, interact with others, and respond to changes." *Id.* at 107.

The ALJ also cited the findings of Dr. Smith and Dr. Thomas that on several occasions, Benavides was cooperative, fully oriented, had good judgment and insight, and fair concentration. *Id.* at 45 (citing 539, 541-42, 556, 558-59, 590-91). Benavidez also reported to these physicians that she experienced improved symptoms when she took her medications. *Id.* (citing 758, 788); *see Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988) (conditions controlled or controllable with treatment are not disabling). Substantial evidence supports the ALJ's finding that Benavidez had mild interaction limits and that Dr. Pitcher's contrary opinion was inconsistent with the record.

The ALJ's explanation also addresses the supportability factor. *Id.* at 18. An opinion's supportability partially turns on its accompanying explanation. *See* 20 C.F.R. § 416.920c(c)(1). Benavidez asserts that the ALJ discounted Dr. Pitcher's findings because they were based solely on Benavidez's subjective complaints. ECF No. 18 at 6. She also insists that the ALJ's explanation was conclusory, mischaracterized the evidence in the record, and failed to acknowledge that "a highly controlled environment of a therapist's office is inherently different from one's ability to maintain the above areas of mental functioning on a fulltime and sustained basis within a work setting." ECF No. 17 at 20-21.

Benavidez correctly notes that her subjective complaints were the source of Dr. Pitcher's findings. However, the ALJ accounted for Benavidez's self-reported anxiety and social limitations by limiting her to routine, repetitive work with only occasional interactions with coworkers and the public. ECF No. 18 at 7-8 (*see* Tr. 43, 45). An ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

Evidence from the record supported the ALJ's conclusion. Other than Dr. Pitcher's findings, no objective, relevant evidence in the record supported Benavidez's contention that she was unable to meet the basic demands of unskilled work. Tr. 45-46. The ALJ cited and discussed five medical opinions: the SAPCs' opinions; Dr. Smith's opinion, Dr. Thomas' opinion, and Dr. Pitcher's opinion. *Id.* None of these medical providers concluded that Benavidez was disabled. *See id.*; *see also Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (finding substantial evidence supported RFC determination partly where "no physician who examined [the claimant] pronounced her disabled"). Because the ALJ's explanation addressed the consistency and

9

supportability factors, permitted meaningful judicial review stated above, and is supported by substantial evidence, the Court finds no error on this point.

### 4. The harmless error rule does not require reversal in this case.

Even if the ALJ had erred in the depth of his explanation, the "harmless error rule" counsels against reversal unless the error caused harm. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Harmful error occurs where a party's substantial rights have been affected. *Id.* By contrast, harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays*, 837 F.2d at 1364 (procedural perfection in administrative proceedings is not required).

If the ALJ erred in not adequately explaining why Dr. Pitcher's opinion was unpersuasive, there is no indication that the error harmed Benavidez's substantial rights. First, the ALJ considered Dr. Pitcher's opinion before finding it unpersuasive. He explained why the record only partially supported her comments and cited to specific examples, while also noting the inconsistencies among her findings and the other providers' findings. Tr. 45-46. As is so often the case, the ALJ could have written more, but a more expansive explanation would not have changed his conclusion that Dr. Pitcher's opinion was not persuasive. The harmless error rule counsels against reversal in this instance. *Mays*, 837 F.2d at 1364.

Second, Dr. Pitcher did not indicate that Benavidez was disabled, and her opinion does not compel a finding of disability. *See* Tr. 691. At most, Dr. Pitcher found that "it appears unlikely" that Benavidez had the ability to "sustain concentration and persist in work-related activity at a reasonable pace." *Id.* She also found that Benavidez's "prognosis could improve with continued

and consistent medical and psychiatric care," and that with continued treatment and stabilization of symptoms, she might benefit from vocational services for job placement assistance available to individuals with her limitations. *Id.* Benavidez defined "marked" and "moderate" just as these terms are defined in 20 C.F.R. Pt. 416, Subpt. P, App. 1 § 12.00 ("Mental Disorders"). ECF No. 18 at 13-14. Section 12.00, which an ALJ ordinarily consults during step three of his evaluation process, contains "functional criteria" to assess the four "areas of mental functioning a person uses in a work setting." § 12.00(A)(2)(b) ("Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself").

The ALJ "evaluate[s] the effects of [a claimant's] mental disorder in each of the four areas of mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation." *Id.* § 12.00(F)(2). To be disabled, a claimant's "mental disorder must result in one 'extreme' limitation, or two 'marked' limitations, of the four areas of mental functioning." *Id.* § 12.00(A)(2)(b).

Dr. Pitcher did not use that language or anything similar when describing Benavidez's condition, prognosis, or functional capacity. Tr. 686-91. Because her findings do not trigger a disability finding under § 12.00, there is no reason to believe that the ALJ would have found Benavidez disabled even had he found Dr. Pitcher's opinion persuasive. *See also* 20 C.F.R. § 416.920a(c)(4) ("Evaluation of mental impairments") (stating only the existence of an extreme limitation "represents a degree of limitation that is incompatible with the ability to do any gainful activity").

Citing Social Security Ruling 85-15, Benavidez alleges that the ALJ committed harmful error because if Dr. Pitcher's opinion had identified extreme limitations, she would have been deemed disabled. ECF No. 17 at 22. But every unsuccessful claimant could make a similar

11

argument that they would be entitled to benefits if the ALJ had "properly credited the evidence." Consequently, it remains within the ALJ's purview to weigh the evidence, including medical opinions. *See Wilson v. Kijakazi*, No. 21-60663, 2022 WL 2339471, at *3 (5th Cir. June 29, 2022) (The ALJ was free to evaluate and weigh the totality of the evidence in the record in reaching his conclusion). Moreover, SSR 85-15 is non-binding authority. *See* SSR 85-15, 1985 WL 56857 (Jan. 1, 1985); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (stating the SSA rulings are not binding on the court). Any error here is harmless and does not require reversal.

## IV.  CONCLUSION

The Court's review is highly deferential to the ALJ. *Perez v. Barnhart,* 415 F.3d 457, 464 (5th Cir. 2005). Because the record reflects that the ALJ applied proper legal standards and reached a decision that substantial evidence supports, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this case **with prejudice**.

It is so **ORDERED** on April 26, 2023.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

12